A. Gagliano, Inc., a corporation engaged in the real estate brokerage business in the city of New Orleans, brought this suit against the defendants, Mr. and Mrs. Fred Fogg, to recover a brokerage commission of $750 for services rendered, together with attorneys fees and other damages amounting in total to $1,325.47. The theory of plaintiff's case is that it secured a purchaser, who made an offer to buy defendant's property in accordance with the terms and conditions of a listing contract between defendants and it, and that defendants refused, without just cause, to accept the offer. The facts which brought about the controversy are as follows.
Defendants are the owners of a seven apartment dwelling situated at No. 2738 Canal Street in the city of New Orleans. On September 8, 1943, they appointed plaintiff as their selling agent for this property by written contract reading as follows:
 "Sales Contract
A. Gagliano, Inc., 310 Interstate Building, Raymond 6536
New Orleans, La., Sept. 8, 1943.
Gentlemen:
In consideration of your efforts to find a buyer for the property ..... 2738 Canal St. .......... including Furniture six apts. .................. I employ you or your successors, exclusively, to sell same for Twelve Thousand Dollars ($12,000.00) cash, or on the following terms: Purchaser to pay agents commission or for any other price, or term hereafter agreed upon, and I agree to pay you or your successors, a commission at the regular rate of .... per cent on the gross amount of any agreement to sell or exchange bearing on said property (minimum commission to be $50.00) made during the existence of this contract, or on the gross amount of any such agreement made within forty-five days after the expiration or termination of this contract, with anyone to whom said property had been quoted, during the term of this contract.
I give you exclusive authority to post signs on the property, to accept a non-interest bearing deposit of ten per cent of the sale price, when satisfactory price to purchase said property is obtained, and to place said deposit in any bank you may select, without responsibility on your part in case of failure or suspension of said bank pending settlement with me, out of which deposit you may deduct your commission as above. In case of employment of counsel to enforce this contract, I will pay you twenty-five per cent additional as attorney's fees, also all costs.
As you are to act upon the faith of this employment and contract, it is to remain in full force and effect for a period of six months.
I agree to refer all applicants to you, and not to interfere in sale of said property, during the term of this contract.
Owner's Signature:
Fred Fogg, Mrs. Fred Fogg.
Address:
......................
We accept the above employment.
A. Gagliano, Inc., By ........................
AU 5662.
Listed by:
Mrs. J.U. Albright.
Expiration Date Mar. 8/1944."
On March 2, 1944, plaintiff received an offer by one Alex L. Bango, through the office of N. J. Clesi, Inc., another real estate brokerage firm, to purchase defendants' property for $12,750 cash "6 apts. furniture including Furnishing, Linens, pots, pans in Deal" and which further provided that defendants would agree to pay agent's commission of $750 which would be equally divided between plaintiff and N. J. Clesi, Inc.
Despite the fact that this offer was dated March 2, 1944, plaintiff apparently made no effort to contact defendants until the afternoon of March 8th, the date on which its listing contract with them would have expired. Mr. Gagliano, president of plaintiff corporation, Mrs. Albright, a saleslady of the company, and a Mrs. Beauregard, an employee of N. J. Clesi, Inc., called upon Mrs. Fogg at her residence during the afternoon of March 8th and, upon ascertaining from the latter that Mr. Fogg was out *Page 827 
of town, did not request her to sign an acceptance of the offer which had been made by Mr. Bango. Instead, Mr. Gagliano repaired to plaintiff's office and sent a telegram, addressed to Mr. Fogg c/o U.S. Pump Barge No. 4, Greenville, Mississippi, reading as follows:
"This is to advise that we have this day submitted an offer of purchase to Mrs. Fogg on property 2738 Canal Street for the listed price twelve thousand dollars all cash, purchaser to pay agent's commission she advised us to send this telegram to you for acceptance.
A. Gagliano, Inc."
Mr. Fogg neither acknowledged receipt of this telegram nor did he accept the offer. Meanwhile, plaintiff corporation, acting on advice of its attorney, accepted the offer for defendants "by procuration". Upon his return to New Orleans, Mr. Fogg rejected the offer.
At the time plaintiff accepted the offer "by procuration" for and on behalf of defendants, Mr. Bango, the offeror, deposited the sum of $1,275 with plaintiff in accordance with his agreement. Subsequently, he brought suit in the Civil District Court against plaintiff and the defendants for the return of this deposit, together with interest, costs and attorneys' fees. This suit was dismissed as against defendants' but maintained as to plaintiff and Bango was given judgment for the amount of his deposit, together with $300 attorneys' fees, costs and interest.
After satisfying the judgment rendered in favor of Bango against it, plaintiff instituted the present suit against the defendants seeking recovery of a $750 commission plus 25% attorney's fees thereon and, in addition, claimed reimbursement for costs, attorney's fees, interest and other expenses which it was compelled to defray as a result of the decision against it in the suit brought by Bango.
Defendants resisted liability to plaintiff on the following grounds:
(1) That plaintiff did not secure a purchaser ready, willing and able to buy their property in accordance with the listing contract for the reason that the conditions and terms of Bango's offer differ materially from the terms and conditions contained in the agreement between plaintiff and themselves.
(2) That the listing contract had expired at the time the offer was presented for the reason that the date on which the contract was made was September 6, 1943 instead of September 8, 1943 as set forth in the agreement.
(3) That, even if the court should find that the date of the listing contract had not been changed, the agreement expired on March 7, 1944 and not on March 8th as alleged by plaintiff, and
(4) That, at all events, plaintiff was not entitled to recover the costs, attorney's fees, etc., that were expended by it in the Bango suit or to a judgment for attorney's fees on the commission claimed.
After a hearing in the District Court on the questions thus presented, judgment was rendered in favor of plaintiff and against defendants for $750, the amount of the claimed commission. Plaintiff's demand for costs and expenses incurred in the Bango litigation and for attorney's fees on the claimed commission were denied. Before this judgment was signed, plaintiff applied for a new trial, alleging that the court erred in refusing its demand for attorney's fees on the commission. This motion was granted for the limited purpose of reconsidering this question. Defendants also applied for a new trial which was refused by the Court. Thereafter, another judgment was rendered by the Court dismissing plaintiff's suit as to the defendant, Mrs. Fogg, but rendering judgment against Mr. Fogg for the claimed commission of $750 together with attorney's fees of $187.50 and costs. Mr. Fogg has appealed from this judgment and, since plaintiff has not appealed from the portion of the judgment denying its claim as to Mrs. Fogg and has failed to answer the appeal respecting the denial of its claim for reimbursement of expenses incurred by it in the Bango suit, the only question we have before us for consideration is whether the judge of the District Court was correct in awarding judgment against Mr. Fogg for the commission and attorney's fees.
In this Court, defendant Fogg has re-urged the contentions made below and, in addition thereto, maintains that the District Judge committed error in granting a new trial to plaintiff for the limited purpose of considering the question of its claim for attorney's fees and that he should have reopened the entire case and heard evidence de novo.
At the outset, we undertake consideration and discussion of the main proposition *Page 828 
advanced by defendant that he is not liable for the claimed commission for the reason that the offer of Bango varies materially from the terms and conditions set forth in his listing contract with plaintiff.
This contention is based upon two theories (1) that, whereas the listing contract provides that defendant employed plaintiff as his agent to secure a buyer for the property No. 2837 Canal Street, including furniture, for the sum of $12,000 cash, the offer of Bango states that he will purchase the property for $12,750 cash "6 apts, furniture including Furnishing, Linen, pots, pans in Deal"; that he did not agree to sell the furnishings, including linen, pots, pans, etc., in the listing contract but only the furniture contained in the apartment house, and (2) that the offer of Bango is further at variance from the listing contract for the reason that, whereas he agreed in the listing contract to sell the property for $12,000 cash, purchaser to pay the commission, the offer of Bango is for purchase of the property for $12,750 and places upon him the obligation to pay a relator's commission of $750 to plaintiff and N. J. Clesi, Inc.
[1] It seems very clear to us that both of the foregoing propositions are well founded as a matter of law and that plaintiff cannot be regarded as having secured a purchaser ready, able and willing to buy defendant's property on the terms and conditions set forth in the listing contract. Primarily, we observe that defendant offered to sell the seven apartment dwelling on Canal Street, including furniture, for $12,000 cash. Did the broad word "furniture" contemplate the inclusion therein of such personal property as linens, pots and pans? We think not. The Foggs testified that they did not intend that such articles were to be considered as part of the furniture of the apartment and that it would have been impossible for them to have complied with Bango's offer for the reason that they did not own the linens contained in the various apartments as such linens and furnishings were the property of the tenants. Bango testified that, when he inspected the property prior to making his offer, it was represented to him by the real estate agents that all linens, furnishings, etc., contained in the apartment house would be included in the sale. It is not shown that either defendant or Mrs. Fogg was present when these representations were made and whoever made them was obviously not authorized to do so. Then, too, it is to be noted that Bango, in making the offer, must have considered that the furnishings such as linens, pots and pans were not included in defendant's offer to sell the apartment house for his offer shows that, whereas all blanks concerning the sale of the building "furnished" are filled in by typewriter, there is added in someone's handwriting an apparent explanation of what the word "furnished" is intended to mean as this addition in handwriting sets forth "6 Apts. furniture including Furnishings, Linen, pots, pans in Deal".
Counsel for plaintiff tells us, in oral argument and in brief, that the foregoing contention of defendant is not only technical but that it was neither stressed vigorously nor given serious consideration by either the District Judge or himself. And he further points to the evidence of Mrs. Albright, a saleslady for plaintiff, as sustaining plaintiff's theory that the word "furniture", as set forth in the listing contract, was considered to include furnishings, such as linens, pots, pans, etc. True, Mrs. Albright testified accordingly but her idea or notion of what was intended by the parties is not controlling. Since defendant and Mrs. Fogg testified that they did not own the linens, pots, pans, etc., contained in the various apartments, it is obvious that they did not intend to include them in the sale.
[2] Counsel further suggests that, at all events, we should not dismiss plaintiff's claim on this particular contention of defendant but should remand the case in order that further evidence might be adduced relative to the intention of the parties, The answer to this plea is two-fold — first, defendant alleged this contention as part of his answer and plaintiff was, and should have been, well aware of the fact that defendant was insisting upon the point as an absolute defense to liability. Hence, plaintiff had full opportunity to produce evidence to show that the inclusion of the furniture in the listing contract was intended to mean that the linens, draperies, pots, pans and other articles, not generally regarded as furniture, were to be included in the sale. Moreover, we cannot see that a remand of the case for the admission of further evidence could avail plaintiff anything unless a showing be made that Mr. and Mrs. Fogg admitted that the word "furniture", as used in the listing contract, *Page 829 
was intended to include such articles which do not ordinarily fall within the category of household furniture.
[3, 4] But, aside from this, there is a more compelling reason for concluding that the judgment below is erroneous — that is, that, whereas the listing contract provides that Mr. and Mrs. Fogg agree to sell the property for $12,000 cash and that the commission of the realtor will be paid by the purchaser, the offer of Mr. Bango definitely places the obligation upon the Foggs for the payment of the commission. Counsel for plaintiff asserts that this variance is of no moment for the simple reason that the Foggs were willing to sell the property for $12,000 cash; that Bango's offer is for $12,750 and merely provides that the realtor's commission of $750 will be paid by the Foggs so that the latter, if they had accepted the offer, would have obtained the agreed price.
At first blush, this contention might appear to have some force but, when carefully considered and analyzed, it becomes manifest that it is not meritorious. The Foggs offered to sell their property for $12,000 cash, provided the purchaser would assume obligation for the realtor's commission. The fact that they set the price at $12,000 did not mean that, if a prospective buyer would offer $15,000 or $20,000, the Foggs would be willing to receive only $12,000 and pay the real estate agent $3,000 or $8,000 for his services in securing a purchaser. On the contrary, if such an offer had been made, it is clear that the Foggs assuming that they would have been willing to change their original agreement which places the obligation on the purchaser for payment of the commission, would unquestionably have insisted on receiving the full amount of the purchase price, say $15,000, and would have agreed to pay realtor either the standard commission or a fair one to which the parties might agree. It also seems apparent that a person offering to sell his property for a stated amount does not bind himself to receive no more than the listing, if perchance a higher price is offered. And it cannot be doubted that it is the duty of the real estate agent to obtain for his client the largest price possible despite the fact that his client has bound himself to sell for a smaller sum. If a price larger than the minimum listed price is offered, in cases like this, where the owner has refused to become responsible for the payment of the realtor's commission, the realtor cannot shift responsibility to the owner by claiming that the difference between the listing price and the offer be paid to him by the owner as his commission. To hold otherwise would be to permit the realtor to take undue advantage of his superior knowledge of real estate values and open the door to the practice of fraud and deceit.
It is also to be noted that, although the offer made by Bango specifically provided that the Foggs were to assume the obligation of paying to plaintiff and the office of N. J. Clesi, Inc., a commission of $750, the telegram addressed to Mr. Fogg by plaintiff on March 8th (hereinabove quoted) does not advise him that he would be required to pay a commission but states that the offer was made for the listed price of $12,000 all cash "purchaser to pay agent's commission". This was clearly a misrepresentation on the part of plaintiff for its President knew, at the time he sent this telegram, that Mr. Bango's offer provided that the Foggs were to pay the commission of $750. We cannot fathom that this misrepresentation was made for any purpose other than as an inducement to Fogg to hastily accept an offer substantially different from the agreement contained in the listing contract.
The argument of plaintiff in this case overlooks the fact that, if we were inclined to sustain its contention, we would be forcing the defendant to assume an obligation for which he specifically denied any responsibility by his contract. The fact that defendant would obtain the full price for which he offered to sell the property cannot be used as a basis for imposing upon him an obligation he declined to assume. The Foggs could have well taken the position that they would be unwilling to give plaintiff and the office of N. J. Clesi, Inc., a commission of $750 (which is in excess of the percentages upon which the fees of real estate brokers for their services in securing purchasers for property are based). In such circumstances, Bango would have been unable to force acceptance of his offer or to successfully prosecute a suit for specific performance as he was not a purchaser ready, able and willing to buy on the terms and conditions set forth in the listing contract. By the same token, plaintiff's suit must fail for it has not secured a purchaser ready, able and willing to buy the real estate in accordance with the terms set forth in its contract with Mr. Fogg. *Page 830 
Being of this opinion, we find it unnecessary to examine or consider the other contentions made by the defendant.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at its cost.
Reversed.